Okay, you want to call the next case, please? 18-2526, Consolidated 19-0015, Alphonse Iannoni v. City of Chicago. Hi, good afternoon. You are both here. So if you could both state your names and spell your last names, and as I said, that doesn't amplify it. Good afternoon, Your Honor. My name is Jeff Apollo, P-O-W-E-L-L. I represent the appellant in this matter, City of Chicago. Good afternoon, Your Honors. My name is John Powers, P-O-W-E-R-S. I represent the plaintiff, Apolli, Alphonse Iannoni. Great. Well, you each get 20 minutes. Do you want to reserve part of yours? If I could, Your Honor. Do I have to give you a specific amount of time? Yeah. Five minutes would be great. Great. Thanks. Thank you. Good afternoon again, Your Honors. Opposing counsel, may it please the Court. My name is Jeff Apollo, and I do represent the appellant in this matter, City of Chicago. Your Honors, we are here before you today based upon an appeal of Judge McGingh's circuit court decision that granted a 19-G petition filed by an employee in this matter. Judge McGingh also awarded attorney's fees and costs and interest in this matter. By way of background, how we got here, this matter was tried before Arbitrator Mason. Arbitrator Mason did provide an award for TTE benefits and 35 percent loss of use of the man as a whole, which equates to 175 weeks of permanency, amongst other things. I think there was also a medical bill that was aborted. Neither party appealed this matter, so as of April 20, 2018, that decision was the decision of the commission and became final. Approximately one month later, the employer did send a check to employee and employee's attorney regarding the award. They included all the TTE benefits that were awarded, as well as all of the permanency benefits or PPD benefits that had accrued from the day after petitioner reached MMI, which is February 10th of 2017, through the date that that check was issued, which I believe was on or about May 14 of 2018. After receiving the check and realizing that the employer's plan was to pay the permanency benefits as they accrued, employee did file the 19G petition, which was then before Arbitrator McGingh, and as I noted before, he granted it amongst other things, and that's why we're before you here today. This case is a case of first impression before this court. As you will see throughout my brief and opposing counsel's brief and also Judge McGingh's decision, there is no precedential case law that anyone could find, nothing at the appellate court level. At least not from Illinois. Correct, at least not. Yes, I believe there were statutes from quote-unquote neighboring states of Colorado and Wyoming. So as I mentioned, an employer does admit that there are no, at least, presidential cases that are in the state of Illinois. However, the employer does argue that if we are looking at persuasive case law or persuasive statutes, things along those lines from other states or in this state, it's the employer's argument that the Illinois Waters Compensation Commission does have a better grasp of what the Illinois Waters Compensation Act does represents, those are the ins and outs of. So it's the employer's position that the Illinois Waters Compensation Commission case law, although only persuasive, should be given more weight than the neighboring states, like I mentioned, of Colorado and Wyoming. So the question in this matter becomes when does a claimant We don't give a lot of weight to other states. Yeah, but when they're neighboring. Correct. The question then becomes when does a claimant's disability become permanent. As you will see throughout my brief, and again, like I mentioned, I did cite two commission case law. This case law does provide us when permanency does begin for an injured worker and also discusses accrued benefits. The first case that I mentioned was the Ormsby case. In that matter, it noted that a claimant's permanency begins the day after his temporary total disability ends or when he reaches maximum medical improvement. So the commission in that case held that the respondent properly paid the amount of PPD benefits that had accrued from the date after his temporary disability ended up to the date of the hearing. So what does this holding really mean for us? It's the employer's position that the holding provides the respondent's ability to pay a claimant PPD benefits as they are accruing, whether it's weekly or whether it's monthly in advance. The holding in Ormsby also confirms that PPD benefits are not due on owing until a claimant, until they actually have accrued. The next case you'll see that I cited is the Johnson v. Steve Golightly case. Employer believes this also further clarified when permanency benefits are due. In Johnson, the issue was what amount of permanency benefits were due at the time of an actual penalties hearing. In that case, petitioner was awarded 86 weeks of permanency based upon that injury. The commission held that petitioner was owed permanency benefits from November 13, 2009, which was the day after he reached MMI, through the date of the penalties hearing that occurred on May 9, 2011. When doing the math, this is 77 3-7ths weeks. Therefore, 77 3-7ths weeks of permanency had accrued and were owed to petitioner as of the date of the penalties hearing. The commission noted that the remaining 8 4-7ths weeks of permanency benefits had not yet accrued and were not yet due on owing. They also decided not to levy any penalties against respondent for any of the permanency benefits that were not yet due on owing. As noted above, the commission case law states that permanency benefits begin to accrue a day after a claimant reaches MMI. In the present case, arbitrator Mason held that the employee reached MMI as of February 9, 2017. By taking commission case law into account, as of February 10, 2017, the next day, that's when employee's permanency began to accrue or permanency benefits began to accrue. The commission's decision became final as of April 20, 2018. As of that date, 62 2-7ths weeks of permanency had accrued, again between February 10, 2017 and April 20, 2018. An employee's PPD rate of $721.66, this calculates to slightly under $45,000. The employer actually issued a check to employee on May 14, 2018, slightly underneath $63,000, so it was actually more than had accrued. Thereafter, employee began to receive monthly permanency checks at the beginning of each month for the benefits that were set to accrue during that month. These were slightly over $3,000. These began in June 2018, and if we do the math, these will continue until approximately April 2020, when all the unpaid permanency benefits would have been accrued as of that point in time. This way of paying out the PPD benefits as they accrue is further supported by the commission's cases that I noted of Edmonds and Jogman. In the Edmonds, the claimant was awarded permanency benefits again in the amount of 69.57 weeks. The commission specifically held that permanency benefits accrued from the date after a claimant reached MMI through the date of arbitration. The claimant reached MMI as of December 2, 2008. The arbitration occurred on June 2, 2009. We're dealing with 25 and two-sevenths weeks. The commission held that this is the amount that should be paid to the claimant with the remainder, again, to be paid weekly. The facts in Jogman are very similar, so I won't go through those, but again, it does clarify exactly when permanency benefits begin to accrue, and then does the calculation between that and when the arbitration hearing occurs. Does the commission at any time order the permanency award to be paid in a lump sum? I have never seen that occur, Your Honor. I've never seen any language in any sort of order from an arbitration or an arbitrator or a commissioner that states that it should be paid in a lump sum. The only time that lump sums are dealt with are when settlement contracts are approved. In order for a settlement contract to be approved, they must be submitted for an arbitrator. He or she then reviews all of the evidence and then makes sure that everything is correct on the settlement contract, or at least seems correct, and then they will approve it. So that's the only way that I've seen a lump sum. Now, this is not to say that if by the time a case is tried and an award is made and the permanency check needs to be issued, if all those benefits had accrued from the date after he or she reaches MMI through the date that it's awarded, then technically that would be a lump sum because it would be one check that would be paid at that point in time because it would have accrued. Well, does the fact that you've never seen that in your years of practice before the commission indicate that that's why we don't have any precedent at this issue of whether it's payable in a lump sum or should be payable in a lump sum? It very well could be, Your Honor. It very well could also be that this is the first time that two parties have come together where the employer decides to pay it out weekly as they accrue, and the other side takes offense to that, and that's the reason that we're up here today. And amputations are different. Amputations are absolutely different, Your Honor. Statutory amputations are different in that case law has interpreted, and again, case law, so we actually can cite to those, interprets that statutory amputations and statutory payments must be paid immediately. I know that opposing counsel in his brief attempts to correlate statutory amputations to PPD benefits like we're dealing with here today. Again, in my brief I explain why I believe those are, in fact, different. Again, we have case law that interprets that they should be paid immediately. Opposing counsel mentions that in statutory amputation cases we can have PPD benefits and TTD benefits that are being paid at the same time. I agree. But again, that's only for statutory amputation cases. Those are unique to Illinois workers' compensation, and I believe that's unique because of the fact that case law has interpreted that those payments must be paid immediately. And I would also note that I don't, as far as I know, there's no case law out there with regard to statutory amputations where that must all be paid in the lump sum if those haven't been accrued to date. Now, counsel's argument, though, that those cases that you cite, Oinsman and others, are just agency policies, that they don't carry any precedential values. I would agree that they are not precedent to this Court here today. I would, though, revert back to my argument where if we do not have any precedential case law, which, again, any of the cases that opposing counsel is citing with regard to statutory amputations, I don't think those are on point by any means. If we have no precedential case law, which Judge McGing also noted in his brief, if we are either to look outside of the state, if that's the decision that's made or that Judge McGing made with regard to neighboring states of Colorado and Wyoming, the employer's argument is that it's... That was Montana. That was Montana. I'm sorry. Yes. It's the employer's argument that the Illinois Workers' Compensation Commission deals with the Illinois Workers' Compensation Act on a daily basis. If we're going to look at persuasive law, I believe that their persuasive law should be given more weight than any of the outside jurisdictions because in those specific cases, like you mentioned, I think in Colorado, it specifically states that an award must be paid in the lump sum in the Act. And in Montana, it notes that it's at the discretion of the injured worker whether or not they want to receive that award in a lump sum or whether they want to receive it weekly. So, again, that language is contained in the statute itself, in the Act itself. In Illinois, we do not have that. But we have Section 9. We do have Section 9. So Section 9 does provide a moving party with an opportunity or a procedure to turn an award into a lump sum. Now, opposing counsel will argue that any time that that happens, it's with regard to wage differential benefits or permanent disability benefits that are paid out weekly as they go. But, again, when taking account into all the evidence that I note throughout my brief, I believe that Section 9 does provide us with further support that lump sum settlements are not the norm in Illinois workers' compensation law. They seem to be the exception. They provide you with different opportunities of how you can take any sort of installment payments or weekly accrued benefits and turn those into some sort of lump sum. So it would take action by one party pursuant to Section 9 to try to turn that into a lump sum. In his brief, an employee argues that the Commission's decision in our specific case does not include a permanency start date. Employer will argue that while it might not include a start date, Commission case law does explain exactly when a permanency period begins. Again, that's going to be the date after someone reaches MMI or the day after their temporary disability period ends. Employer also argues that a claimant has a vested right in PPD benefits the moment an award becomes final and, therefore, all the PPD benefits have accrued at that point in time. Again, if we look at the Commission case law, it's clear that the permanency date begins and they begin to accrue as of that point in time. The Commission has said numerous times that they will not levy any sort of penalties against permanency benefits that have not yet accrued, which, therefore, provides the reasoning that there are benefits that do accrue and have not yet accrued at that point in time. Also, opposing counsel relies upon the case of National Bank. In that case, he notes that a claimant's estate may continue to pursue a claim for PPD benefits that may have become due and payable prior to death. Again, if we were to accept that that is the holding, which I believe that it is, that then further supports the employer's position that there are permanency benefits that have accrued and some that have not yet accrued. In that point in time, they were planned to go in after everything that had accrued to date. So, therefore, it further proves that there are accrued benefits with regard to workers' compensation world. Again, there's no law that is contained within an employee's brief that supports his argument that awarded PPD benefits should always be paid in a lump sum, whether or not they accrued things along those lines. We have no precedent that's before us. And, again, with regard to the statutory amputations, I believe that there is a difference between those cases and what's currently here before you today. The second issue with regard to this matter is going to be the cost and attorney's fees. Employer does not believe that cost and attorney's fees should have been awarded to employee and employee's attorney. There is no precedential case law that anyone can point to that shows or demonstrates that the employer acted in a way that was either unreasonable, vexatious, anything along those lines when paying out these accrued benefits. Employers paying these accrued benefits before they actually do accrue, they're paying them toward the beginning of the month for the benefits that will be accruing throughout the remainder of the month. And, again, for a judge beginning to award cost and attorney's fees without being able to rely on any sort of precedential case law, as is the case of first impression, I believe it was an abuse of discretion at that point in time with regard to that award. In conclusion, the Unemployer's Compensation Commission's case law should be provided more weight than those of the neighboring states of Colorado and Wyoming. I think I've gone in detail with regard to Montana, with regard to why it should be. Each state's Workers' Compensation Act is different than the others. Those two states have specific language in the act as to how to deal with any sort of rewards, whether it should be paid in a lump sum or it should be the employee's discretion. Again, the Illinois Workers' Compensation Commission deals with the act on a daily basis. They are, should be considered experts in the field with regard to how they handle it, especially with regard to these accrued benefits. The Illinois Workers' Compensation Commission does continue to distinguish accrued benefits versus non-accrued benefits, as noted in the cases that I've cited to you. The commission case law clearly identifies the date on which permanency does begin, and they do provide calculations with regard to what is due in owing at the time of either a penalties hearing or an arbitration hearing. So in conclusion, the employer would ask this Honorable Court to find that the Illinois Workers' Compensation Commission case law to be more persuasive than those of neighboring states. The employer would ask that the decision of Judge McGinn with regard to the 19G petition be reversed, the decision with regard to the cost and attorney's fees be reversed, and the decision with regard to the interest being awarded and how it was calculated to be reversed as well. Thanks. Thank you. Good afternoon, Your Honors. President Counsel, my name is John Powers. I obviously disagree with counsel's analysis of this case. I would point out to the Court that this is probably for the Court to present Section 19G of the Illinois Workers' Compensation Act. The only issue for the Circuit Court was whether this award was paid or was it not paid. And we know as of April 20, 2018, the Commission's award became final. We also know to the penny what that award was. It was $132,480.23 precisely. As far as the rationale as to whether this should be paid as an installment, over two years, Mr. Ioanni's disability isn't going to become worse over two years. It was found to be 35% of the person final April 20, 2018. And that's what Attorney Mason awarded him, 35% loss to use of the person as a whole. And when you do the math, what that comes to is $126,209.50, period. The same rationale applies to this case as what's been applied to amputation cases. The Appellate Court has said in amputation cases, the employer knows to the penny what its liability is when that amputation occurs. It does not serve the purpose of the Act, which is to compensate injured workers for their injuries. To pay this out over time when the employer knows what its liability is. Pay the award, period. Don't stream it out over time. In fact, if Mr. Ioanni was dead today, the city of Chicago is still going to be paying this award. They won't dispute that. This award should be paid, period. There's no installment plan in the workers' compact. There's no section in the workers' compact that refers to permanent partial disability awards as being installments. Now, how do you reconcile a Section 9 petition where the petitioner asks for a lump sum payment of a permanency award with instances like this where there's a permanency award by the commission and it's silent as to whether it's an installment or a lump sum? Because there's certain permanency awards, as far as I believe, that you cannot calculate the precise dollar amount on. For example, if you're found permanently totally disabled, the employer owes weekly benefits for every single week that person's alive. Once the claimant dies, the employer's liability ends. The same with wage differential awards. The same with children of deceased parents. They continue receiving weekly benefits until either the children die before age 18, or if they turn 18 and they don't go to a fully accredited university or college, if they do, then they continue to receive benefits until age 25. But there's mechanisms in Section 9 that allow a petitioner to go before the commission and say, look, I want to lump out my benefit. There's certain situations. But doesn't that happen after the award and after some payments have been made, typically? No, because Section 9 also refers to or allows for a lump sum to be made before there's even a decision. In fact, when you look at the commission's annual report, 98 percent of the cases are disposed of through a lump sum settlement contract. And at the top of the contract, it used to say for Section 9. But that's under a settlement. So why doesn't the commission specify that if it's that frequent in the remaining cases? Specify a lump sum. Why don't the petitioners ask for a lump sum? They don't need to. That's my point here. Once an award is made, and you can calculate the award of the petitioner. But you can't be the first employer to provide periodic payments to cause you to file this appeal. Apparently so, because I'm the first time going before this court. Otherwise, they would have cited some case law, and I would have cited some case law, saying one way or the other. But it seems to me over all these years, this is the first time an employer decided to pay the permanency in installments? You know what, Your Honor? From time to time, things will actually surprise you as to what goes on across the street. For example, there's a case that this court found called Royal County Forest Preserve. It was actually the Workers' Comp Division of the appellate court, where a claimant had suffered a shoulder injury. The word shoulder actually appears under the specific list under 8E for the arm. But this court said, no, the shoulder is not the arm. It goes into the 8D2 category versus a hole. For the first time in over 100 years, the commission's been doing it wrong all this time. So it doesn't mean they haven't been doing it wrong all this time. In fact, there's cases like this case where they don't put that language in there, saying, okay, it starts at the MMI date, whatever that means. Because let's say Mr. Angoni had permanent work restrictions, like right now. Yeah, they're what, sir? Permanent work restrictions. When he reached maximum medical improvement, and if his employer could not accommodate his restrictions, he would start doing a job search. And the employer would be liable to pay what's called maintenance benefits. It's the exact same as temporary disability, but it's maintenance. The permanency isn't paid simultaneously as the maintenance, because you don't know whether he's going to turn into a wage loss or whether he's going to turn into an odd-lot penitentiary or whether he's going to be under Section 8D2. So you don't get to that point yet. But the employer, after the quote-unquote MMI date, they're still required to pay. And before you even get to the MMI date for an amputation, when you can calculate the precise penny, what's owed, they're required to pay that. And that's what the case law says. The case law says it doesn't do justice to pay these out over time. When the employer knows what side those is, they're going to owe it one way or the other. Either they're going to owe it today or they're going to owe it over a certain number of weeks. Just pay it right now. But what makes Ornsby wrong, the commission's case? Because that issue was never brought before a court. That's the agency. No one ever raised that issue. But you're saying it's wrong. Well, first of all, Ornsby's wrong because Ornsby's not a PPD award. It's an installment award. I believe it's either or. Well, then you're not saying it's wrong. You're saying that it's not a point. Correct. It's not applicable to this argument. But even if it was, like I said, the commission has been wrong numerous times before as to how they interpret the law. That's not their job. They're the executive branch. That's this court's job to interpret what the law is. We're not dealing with an agency's interpretation of its own rule. We're dealing with the agency's interpretation of the statute. But who cares how the agency interprets the statute? That's this court's job. This court interprets the rule and tells the agency what the law is, not vice versa. In this case, if the city was paying the permanency award on a weekly basis and if Mr. Iannone died, would the unpaid portion be payable to his estate or would it cease? It does not. According to the case law, it does not obey at that. It has to continue paying. Correct. Well, and there's actually provisions in the act if you die, let's say, of unrelated causes. If you have children or a widow, it goes to law and order. So if you don't have children or a widow, by operation of law, it goes to the estate. But there is a mechanism. In fact, he could have passed away before we tried the case and we could still approve that permanency, and they would still owe it. Those benefits do not abate at death. Counsel, while at National Bank, I actually I think misargued that in my brief because I was reading that again this afternoon. National Bank was owing an award for about $780,000 in medical and about 126 weeks of temporary total disability. No permanency. The court specifically stated there was no permanency awarded in that case. And what the employer argued there was, well, once the claimant died and his widow died, they're abated at death. And the court said, no, the employer's liability does not abate at the claimant's death. What about that Republic Steel case? Again, I believe that was a parental disparity case, which parental disparity benefits are installment benefits that last as long as the claimant lasts. Once the claimant dies, the employer's liability ends. You cannot calculate to the precise penny what parental disability liability is going to be on the date of the award. You cannot calculate to the precise penny what a wage differential's liability is going to be on the date of the award or death benefit on the date of the award. But like an amputation, you can calculate, as in this case, what the employer's precise liability is once the award becomes final. Yeah, what about the Nann v. Industrial Commission, the 1985 case? I'm sorry, I can't. Nann v. Industrial Commission, the 1985 case. Nann. Where the court says that lump sum awards are limited to exceptional circumstances, basically to safeguard the money. You're not familiar with that? I'm not familiar with that, but I suspect that case is most likely going to be a death case. We're dealing with orphans, and the parent comes before, because I've seen this before, where the parent comes before on behalf of the children and says, I'd like to lump out the case, and the arbitrator says, okay, what financial background do you have in order to make investments to provide weekly benefits to these children? And I'm like, well, I've got a high school degree. I mean, I would just like to lump out the case. So I suspect it's going to be either in that situation, where there's an installment award of some kind, like a permanent total disability or H.S., or most likely it's going to be a death benefit involving children. It would not have been a permanent partial disability award. And is that a commission case, or is that a federal court case? It's a federal court decision. Page 138, Allot 3rd, 143. And page 146, 1985. And are you aware of what type of award that is shown? It wasn't either, I promise you. But the court just made the comment that the lump sum payments were an exception rather than a rule. But that goes back to Because that was an appellate court decision. Yeah, and actually the Supreme Court said that too, I believe, in that Skaggs case, which the employer cited to, which, again, I think a lot of it has changed since the 1930s. When you look to the commission's annual report, virtually all of the workers' comp cases filed in Illinois are now disposed of through lump sum agreements. So I don't think it's necessarily applicable. Plus, even in Skaggs' case, you were dealing with a death benefit where the widow was trying to lump out the benefit in order to purchase a farm on behalf of her and her children. So, again, in those situations, I think the lump sum is the exception, not the norm, where they're paying out for an indefinite period of time. But in this case, some arbitrary amputation, the liability is known to the precise penny. We're not dealing with some arbitrary number that's questionable as to how long the person is going to live or not. We know to Going back to the Republic case, you asked that question about whether it was permanent. What it says is that he became permanently and totally incapacitated for work. Correct. And that means he's entitled to benefits for the rest of his life. Now, in that situation, it's speculative as to what the precise amount is going to be or what the employer's precise liability is going to be. Because once that claimant in the Republic still dies, the employer's liability ends the day he dies. It doesn't keep going forward. If our nominee had died the day after we tried this case, his liability doesn't change. They still owe $132,480.23. And our liability is a liable debt. They still owe these benefits. That's why I believe the amputation cases are more analogous to this situation than what they are to installment awards, right parental disability, death, or wage differential awards. In those awards, you don't know what the total liability is going to be until the person actually stops receiving benefits. Again, the definition of an accrued benefit is one that's due and payable. The definition of an accrued benefit is one that is due and payable. We know in installment awards, in order to receive a week of benefits, you have to live a week. Whether you're a parental disability, whether you're a minor receiving a death benefit, or whether you're receiving a wage differential award, you have to live a week in order to receive another week's of benefit. What must Mr. Ayanami do in this case in order for him to quote unquote accrue another week of benefits? If he dies, according to the city, he's still accruing weeks of benefits for the next two years. That makes no sense. Again, going back to the amputation cases, we know precisely what the liability is. You guys want to say something? In none, the claimant was totally permanently disabled and filed for receiving weekly benefits. And the claimant filed a petition with the industrial commission asking to receive a lump sum. The industrial commission denied that. The matter went to the circuit court of Vermillion County, which reversed, and subsequently the appellate court reversed the circuit court and found that lump sum payments were not the rule and that that was an exception. And again, that's my argument, Justice Walker. A parental disability award is an indefinite and stony award going for as long as the claimant lives. In the none case, and you and Justice Pierce had this dialogue earlier, which went to Section 9, the claimant actually filed with the industrial commission asking for the lump sum payments. That was not done in this case. Correct. And here's the difference, though, between none and the present case. In none, what's the precise liability of the employer? Are you looking for the dollar amount? How much is the employer going to owe that claimant? Well, it's not determined. Exactly. Exactly. It's not determined because. It's $187 a week, though. Right. Per week, so as long as he remains alive. You cannot determine when those benefits stop. You cannot determine what the entire amount is going to be. But you can determine what the precise amount that the employer owes in the present case is. We know that's $126,009, $209.50. Precisely that amount. He doesn't have to petition the commission to lump that out because we know what the precise benefit is. And there's some situations like a hardship or a claimant receiving a premature disability installment award may petition the commission to lump it out. Or in certain situations where maybe the insurance carrier's financial condition is unstable or the employer's no longer around, in those situations under Section 4 they do. It's rare, but they do sometimes come before the commission and say, hey, I'd like to lump out my award because who knows where the insurance carrier's going to be around next year. They may go belly up and this may not be covered under the guarantee fund. So in those situations, yeah, the claimant who has actively received an ongoing installment award is going to petition the commission to lump out the award. But this isn't an installment award. But isn't there an advantage any time somebody, you know, the time value of money? If you had to pay money, wouldn't you rather pay it over time than pay it as a lump? Or typically there's a reduction if you're paying it as a lump because of the time value of money. Well, it depends upon whose perspective it is. If you're the employer, yes. If you're the employee struggling with a disability, you're going to say the intent of this act was to compensate me for my injury today. My alpha thalamus injury is not increasing 0.2% over time. It was found to be 35% of the person final April 20th, 2018 period, not starting on some imaginary date and going further for the next two and a half years. His disability isn't changing over the next two and a half years. We know it's 35% of the person. And we know exactly what the liability is for that disability. It should be paid right now. When a jury is reaching an award across the street at the daily center, the liable party doesn't have the option to set up an installment plan and say, you know what, we're just going to start paying you a certain amount. We're going to start comparing workers' camp cases to civil cases. We can spend months talking about that. Yeah, I know. So my point is basically this is not an installment award. It's similar to an amputation. When you can calculate the precise dollar amount of the liability, the same as what you can do when you amputate a specific number listed under Section 8E, that should be paid immediately, period. There's no dispute here as to what that dollar amount is. The city agrees exactly what that dollar amount is. The only dispute is how it should be paid. And obviously the intent of the act was to compensate injured workers for industrial losses. Alfonso Añones should be compensated for his injury today, more specifically last year for the loss he was found to have as a result of his injury, not over the next two years. Well, what's your position on the notion that if the city took this position because it really had no precedent to say that it was right, wrong, or indifferent, why should they be assessed attorneys' fees and costs, penalties and injuries? Well, it's not a penalty. That's something that's found under… Well, attorneys' fees and costs under 19G. And the case law addresses that. The only defense to a 19G petition is payment of the award. And it's the judge's discretion in the circuit court as to whether to award attorneys' fees. Judge McGee didn't have to award all the hours I submitted. He didn't have to award the dollar amount I submitted. It's up to his discretion to determine whether any attorneys' fees, period, should be awarded. And I believe he made the award of attorneys' fees because there's no evidence in the record to the contrary. The contrary of what? To not… To not award your fees? To either reduce my fees or not award any fees.  The failure to comply with the payment provisions. In here, we have a payment provision that is silent as to whether it should be a lump sum or an installment. So how do you say that they're intentionally not complying with the award? We have to prove intent. It's one of the factors. The dispute among the parties is one of the factors that the court looks at in determining how much, if any, to award an attorney's fees. But it's not the sole factor. In fact, the case, I think I may have cited to my brief in this session, deals with several factors that the court looks at. One of the factors is the negotiations between the parties before filing, which in this case was silently. I kept asking the city to pay the award and got no response whatsoever to offer to file the 19-G petition. Okay. Now that's another factor for the court to look at. Although the court clearly finds that lump sum payments are the exception and not the rule. Again, when you're dealing with an installment award, I think you have to put into context, Your Honor, you're referring to installment awards where there's not any specific end date or not any specific dollar amount to limit the liability. We know what the weekly amount is in installment awards. We do not know how many weeks those awards are going to be paid. That's indefinite. That's speculative. Okay. So in those situations, the lump sum payment is going to be the exception because you don't know what the liability is going to be. It could be calculated based on a life expectancy. Could be. Well, if the petitioner argues my life expectancy is 150 years, he could argue that. I mean, there's ways to argue it. Well, if the respondent comes in and says his life expectancy is two years because of his diagnosis of lung cancer, we are not going to tell you how many years. Right. Which is why it's not the norm, and besides which, it goes back to my point. All of a sudden, you could have dropped dead the day after you tried this case. The liability for paying this award is going to remain the same regardless of whether it is or not. The court also said that the interests of both the employer and the employee are relevant in deciding whether or not permanent payment should be made as a lump sum. Again, Your Honor, you're conferring apples to oranges when you're talking about installment awards to a lump sum award. We realize that because that's the question in this case. Well. Lump sum versus installment. Correct. And there's no reason to pay a permanent partial disability award in installments. You know what the liability is. You don't know what the liability is. Your Honor, I gave you one reason earlier. One is that, I think it was Justice Griffin said, you'd rather hold on to the money and pay it in installments as it becomes due. And this court has addressed that. It does not go towards the intention of the workers' compact to allow an employer to do that to an injured worker. Well, it would be in the interest of the employer. It would be in the interest of the employer. Excuse me. Case law clearly says that you consider the interests of both. It would be in the interest of the employer to pay nothing. But that's not the law here, Your Honor. It's a decision from the Fourth District, 1985. Again, when you don't know what the precise dollar amount is going to be at the end of the day, yeah, it's going to be a question of fact for the commission to determine whether it's in the best interest of the parties. They won't dial out. But again, if the claimant in this case died after his condition became permanent, regardless of if he died before he even tried this case, you can actually do that. We can prove that permanency after death of a claimant. Liability doesn't change. They're going to be liable to pay the payment of partial disability regardless. There's no dispute here as to what the liability is. In the Solomon Awards, there's a dispute as to what the liability ultimately at the end of the day is going to be. The employer's obviously going to be arguing that the claimant's not going to be receiving benefits for as long as what the claimant's going to be arguing. And it's going to be up to the commission to decide whether it's in the best interest to do that or not. In this situation, it doesn't matter whether he's alive or dead. The liability remains unchanged. And we totally understand your argument. And so I just want to make one last comment on it. So the Ornsby case actually disagrees with your argument. I realize that that's a commission case, but the commission disagreed with that. The commission found that they did not have to be paid a lump sum. But you're saying that decision misinterpreted the statute and that that's the job of this court and not the commission. No, I'm saying when you're not correct. No, because you're not saying that that's the job of this court and not the commission? Well, obviously it's the job of this court to interpret the statute. So you agree with that part. Just a second. And you also agree that that decision cuts the other way. Yes and no. And the no is because this issue was never directly addressed in Ornsby. That's the problem. When you start signing the commission cases, they don't argue this issue. They're arguing other issues. But just coincidentally, this issue is being tied along with it. You're comparing opposite ranges again. And that's the problem here. And, you know, it's to the disadvantage of this court because. Well, that case involved the exact issue here, which was permanent partial disability. It also involved penalties. How much should be paid in penalties? And I think now I refresh my memory. I think what they're arguing was when does the PPD start? The claimant wasn't saying that it was paid on some. The claimant was conceding, okay, it should be paid out in installments, but it should be paid out starting on the day of accident versus the day of the quote MMI date. That's not the issue before this court. I don't want to be bound by the foolish ideas of some of my colleagues across the street. This is not even determined until the MMI is determined. But when they make the awards, right now I know for sure, as a result I think of this case, they're now saying pay the accrued starting on the accident date, which doesn't necessarily include permanent partial disability. It also includes temperatural disability, medical benefits, any benefit quote unquote accrued. But you have to go back and look at the definition of what an accrued benefit is. An accrued benefit is one that's due and payable. And again, my argument is, what must Mr. Ione do to make another week of benefits due and payable? He doesn't have to live another week. If he is receiving an installment award, like a permanent partial disability or a wage loss, he must live another week in order for another week of benefits to accrue. He does not have to do that in this case involving a permanent partial disability. This case is identical to the rationale used in the application cases. Once you can determine the liability, it's accrued, period. You don't start messing around with installments. Anything else? I don't know. All right. Thank you very much. Thank you. Your Honors, opposing counsel. Opposing counsel is up here discussing the word liability over and over again. When you can figure out the exact amount of liability, everything is due and owing. The liability is not the question here. The question is, how can permanency benefits be paid? As I was up here before you earlier, the Commission has noted numerous occasions and has cited numerous cases exactly when permanency begins. It's the day after MMI. Things are paid out weekly. But his argument is that the day of the award, you owe him $130,000. Okay? It's silent as to how you pay him the $130,000. Right? Correct. His position is that the theory of the act or the purpose of the act is to compensate and benefit the employee. It's of no benefit to the employee. It's a better benefit to the employee to get it in a lump sum than it is to get it paid over three years or five years or whatever. So how do you answer that? Why do you get to determine how to pay a fixed amount of money? Well, I think that's the reason why Section 9 is there. Section 9 does provide for that lump sum if that's the occasion. It also provides the opportunity to settle the case before there's any sort of award or settle the case after the award. But with regard to this, we're, again, looking at the Commission law and how does the Commission handle these cases. The Commission has noted in those numerous cases that I cited that permanency benefits are paid as they are accrued. And I believe that's what the employer can rest on. With regard to paying out weekly, again, I understand that there's nothing in the decision that says that it must be paid in a lump sum or it must be paid weekly. So the Commission cases that you're relying on or referring to us, basically, are in those cases they decided that an installment payment was appropriate. So would it be fair to say that that might be fact-dependent on that case? The cases that I've cited, specifically one case, I believe, the Johnson v. Steve Golayly case, it specifically noted that 86 weeks of permanency were awarded. This is the one that had the penalties petition, the penalties hearing. They determined that as of the penalties hearing, there were 77 and 37 weeks of permanency that had accrued. They confirmed that was owed as of the date of the penalties hearing. Now, while the lump sum versus the payment of weekly benefits might not have been the main issue, certainly I can believe that we can take the holding from that case and extrapolate it to argue that the weekly benefits do accrue. You can pay them out weekly. For them not to award any sort of penalties with regard to the eight unchanged weeks that have not yet occurred shows that there is an ability to pay it out weekly. I believe that's what the employer's position is with regard to this claim. I believe that's what the commission has interpreted the act to allow people to do, and that's the employer's position here today. Are you saying that basically the general rule is it's paid weekly, monthly, and if there's some exception to the general rule, the petitioner should go in under Section 9 and seek a lump sum payment? That's absolutely correct, pursuant to Section 9, I believe. Now, if we found it the opposite, and this has nothing to do with this case, but I'm going to ask it anyway. If we found that the general rule is lump sum payment, is there a provision in Section 9 that the employer could go in and ask for it to be a installment? There's not. There's not. It's only the other way around, which, again, I think will support the employer's argument that they can be paid out weekly in installments, permanency awards. PPD awards can be paid out weekly in installments. And then Section 9 provides the petitioner to have the opportunity to file a motion to be paid out in a lump sum. Now, I'm not sure if you're familiar with the Nunn case. Counselor and I discussed the Nunn case, and you kind of heard me recite what the case was all about. That case dealt with total permanent disability. This case is a permanent partial disability case. And in that case, the respondent must have received $187 weekly, really for the rest of his life, or until he goes back to work or becomes no longer disabled. And there was no way to determine what that amount was. And the commission ruled accordingly that the lump sum payments did not need to be paid. Circuit court reversed the commission. The appellate court reversed the circuit court and returned the commission. Now, in this case, we're talking about it's different from that permanent, that total permanent disability case. This is a partial permanent disability case. And as counsel stated, Mr. Powers stated, we know exactly the amount in dispute. We know exactly the amount of the liability that the city owes. That's not going to change whether he dies today or he lives for 100 years. Why wouldn't the city go ahead and pay the full amount right now? What would be the reason for that? Well, I'm not positive exactly what the city's reason is for paying it out weekly. But the argument by the city is that the commission does allow benefits to be paid out weekly. Again, I understand that there is a difference, obviously, between a PVD award versus a TPD award. I understand there are differences between being able to actually calculate, or a PTD award, being able to calculate what someone's liability, as opposing counsel said, versus an ongoing payments until the day of someone's death. And again, I understand that if Mr. Iannone were to pass away before trial or pass away tomorrow, those benefits are still being paid. That won't change. But as the employer looks at the case law, again, albeit persuasive at the commission level, the employer argues that they do have the opportunity and the right to pay these benefits as they accrue and become due and owing at that point in time. Now, my first question was, why wouldn't the city pay it? And you're not quite sure. Well, I'm not sure if the city has personal reasons. I'm sorry. Not personal reasons. That's what you haven't answered. But I guess now the question is, why shouldn't this court order the city to pay it all right now? We know exactly what that amount is. Why shouldn't we? Because I believe that the case law that I provided to you, again, albeit commission level, I understand that it's persuasive, but I believe that the commission does hear these cases on a daily basis. They live and breathe the act. And they have, pursuant to the case law that I've cited to you, they do provide the employers an opportunity to pay these out weekly as they accrue. They specifically have the date that permanency begins, and they've had cases that note that as of a specific date, whether it's a penalties petition, whether it's an arbitration hearing, how much is due at that point in time, how much has accrued. And there are cases that discuss the fact that the remainder can be paid out weekly. But what authority do they have to do that? The authority that they currently have is the only authority that I can cite to you in front of you today, and that's the commission. When the commission law is persuasive, I understand that. But when taking that as precedent. You mean precedent. I'm referring to, is there a rule, is there a statutory provision, is there some case law that says they have,  Yeah, with regard to the weekly benefits, there's no precedential case law, and I think that's confirmed by opposing counsel. I think that's confirmed by Judge McGee in this matter. Again, I would just refer to the commission law about how they've been doing it. They live and breathe the act. They're experts on the act. An employer would rely upon that case law to be persuasive in front of the justices here today. Great, thanks very much. We'll take it under advisement. Thank you. Good job. Yep.